Curia, per Dunkin, Ch.
The decree of the circuit court refers to the previous decrees in this cause for the statement' of facts.
The complainant and defendant are sons of Jesse Smith, who died intestate about the year 1826. In 1813 or 1814 he had given to the complainant a tract of land containing about 321 acres, of which he put him in possession. He assisted him in erecting a dwelling house, &c. on the land, which the complainant has ever since continued to occupy. A year or two after-wards the father caused a resurvey and plat of the lands to be made by W. Hemingway, in which the boundaries of the complainant’s tract, and also of two other tracts, were defined. The defendant’s answer says that these two other tracts were intended for his two other sons, but the father never made titles to either of the three.
■ After the death of the intestate, and in the year 1828, proceedings in partition were instituted in the Court of Common Pleas for Horry District, for a division of the real estate among the heirs. After much delay a writ was issued in 1831. It was testified by the defendant’s witness (W. Smith) that when the commissioners came to divide the land, the complainant, on being asked if he gave up his land, replied, “I know not what else to do, I have no more title than the rest.” The commissioners recommended a sale. Accordingly, in December, 1831, all the *135 lands of the intestate, comprising 2364 acres, were sold by the sheriff and bid off by the defendant for $490,25.
The allegation of the bill is, that defendant was unable to comply with the terms of sale by giving bond and security, and the sheriff was about to re-sell the lands; — that in the mean time he and the complainant had an interview, in which he stated that he had not bid off the lands for himself, but for the benefit of the heirs to whom they had been given. That it was then proposed that if the plaintiff would become surety on the bond to the sheriff, and would pay his proportion of what was necessary to make up the widow’s portion, to wit, thirty-one dollars, that he, the defendant, would execute a title to him for tract No. 1 as sold by the sheriff, which included the complainant’s land and that of Isaac Hardee, another heir. That the complainant accordingly executed the bond to the sheriff as surety, some time prior to May 1832, but the defendant afterwards refused to execute the deed.
That the defendant being indebted to the complainant on a note for $123,68, being complainant’s share of the personal estate of his father, of whom defendant was administrator, a suit was instituted for the recovery of the amount, in 1833. That the defendant set up as a discount the amount which he, the complainant, was to have paid under the above stated agreement. That after some discussion, the discount was fixed at thirty-one dollars, which was so accordingly entered on the verdict. That the defendant renewed his promise to execute a deed to the complainant, but that he had since refused.
The verdict on the note was rendered at Fall Term, 1833. The complainant continued in possession of the land. Some years afterwards, but at what precise time is not stated, the defendant instituted a suit against the complainant to try the title to the land, and a judgment was rendered against him at Fall Term, 1838, for the land, with sixty dollars damages, and costs. On which he has taken out an execution of habere facias 'possessionem, (fee. (a.)
The object of the bill is to restrain proceedings at law, and compel the defendant to a specific performance of his agreement.
The defendant, among other things, relied on the statute of frauds. The Chancellor was of opinion, and this court agree with him, that payment of the purchase money is not of itself *136 sufficient to ^withdraw the agreement from the operation of the statute, and for the very satisfactory reason, that the money may be recovered back at law.
But in addition to this the complainant insists that the defendant, being unable to comply with the terms of sale, the sheriff was about to re-sell, when the complainant would have purchased his own tract at any price, and that, under these circumstances, he agreed to become surety for the defendant, and did become his surety for the whole amount of the purchase, on condition of receiving from him a title for his own tract at the price stipulated. If the complainant, after having complied with his part of the contract, and the refusal of the defendant to execute his part, had immediately applied to this court, there might be more difficulty in applying the bar of the statute. But the complainant was not disturbed in his possession, certainly until after September, 1835, and perhaps for a longer period. Does this possession of the complainant preclude the defendant from relying on the statute of Irauds ? All the authorities shew that possession may, or may not, take the case out of the statute, according to circumstances. “ The delivery of possession,” says Lord Rosslyn, in Wills vs. Stradling, 3 Ves. 382, “ by the person having possession to the person claiming under the agreement, is a strong and marked circumstance, but the mere holding over by the tenant, which he will do of course if he has no notice to quit, would not of itself take the case out of the statute.” So in Morphett vs. Jones, 1 Swanst. 181, (the authority cited in the decree) “between landlord and tenant, when the tenant is in possession at the date of the agreement, and only continues in possession, it is properly observed that, in many cases, that continuance amounts to nothing.” But there may be other, or additional, circumstances, even as between landlord and tenant, as the Master of the Rolls proceeds to shew, where it would be a fraud to permit the party to avail himself of the statute. “ The acknowledged possession of a stranger (he says) in the land of another, is not explicable except on the supposition of an agreement, and has, therefore, constantly been received as evidence of an antecedent contract, and as sufficient to authorize an enquiry into the terms ; the court regarding what has been done as a consequence of contract or tenure.” In Clinan vs. Cook, 1 Sch. <& Lef. 41, Lord Redesdale states that possession is only construed as part performance, where the party might be treated as a trespasser, unless evidence were *? admissible of the parol agreement. See also 2 Story Eq. § 763. This is perhaps the most satisfactory test. Let it be applied to the circumstances of this «ase. After December, 1831, or the Spring of 1832, a stranger (the complainant) is in the acknowledged possession of the defendant’s land. The possession is continued for several years. He is then treated as a trespasser, and damages are recovered against him at law as a trespasser, because, in the language of Mr. Justice Story, “ his parol agreement is deemed a nullity.” The complainant at no time after the sale in December, 1831, occupied the position of a tenant who would hold over of course unless. he had notice to quit. His possession is only explicable, in the language of Morphett vs. Jones, “ upon the supposition of an agreement,” and is sufficient to authorize an enquiry into the terms of that agreement. It would be a fraud on the complainant to permit him to continue in possession, and then recover damages for the rents and profits. This court would not permit the defendant to shut out investigation under the plea of the statute.
Then, as to the terms of the contract. The defendant denies no substantial part of the alleged agreement, except as to the price to be paid. On this point he says in his answer that he told the complainant that, “ if he would pay his proportional part of the bid, or let his proportional part be deducted, and that also of the overplus, he might take the land. That he told the complainant at the time what the surplus was, and that it exceeded, with the costs and all, considerably, the sum of thirty-one, or thirty-six dollars.” That afterwards, when the bond was executed to the clerk of the court, he told the complainant, “he might take the land at his bid, if he would pay his portion of the costs and sign the bond as surety ; which complainant agreed to do, and signed the bond with him.” Again, he says, he “ offered to let the complainant have the lands, if he would settle according to the clerk’s and sheriff’s papers, which complainant refused.” From all this, it is not very clearly to be infered' what was the price at which the defendant agreed, or was willing, to let the complainant become the purchaser of the lands. But the answer further admits that, in the trial of the suit by the complainant against the defendant, on the note, in 1833, he, the defendant, “ set up as a discount the sum of one hundred and seventy-one dollars, being what he (the defendant) had paid for the land — the amount he regarded as the overplus, which complainant ought to have paid him.” It is hardly necessary to say, that this is precisely *138 the same as if the defendant had instituted a suit against the complainant, alleging or declaring that he had sold the land to the complainant at the price or for the sum of one hundred-and seventy dollars, and that this sum was due to him on that contract. It appears by the record in the case, that the jury allowed the discount of the defendant, to the amount of thirty-one dollars, thereby affirming the contract of sale as alleged by himself, but also fixing the price, or the amount then due on the purchase, at thirty-one dollars, the sum which the complainant alleges he agreed to pay, and which, being allowed by the verdict and deducted from the note, was thus in fact paid to the defendant.
There are some circumstances which in themselves corroborate the allegations of the bill. The lands of the intestate were sold in several tracts or parcels, and all were purchased by the defendant. No. 1, as has been stated, included two tracts, the complainant’s and Hardee’s. For these a separate deed was executed by the sheriff to the defendant. The boundaries of the land were filled up by one of the witnesses to the deed, at the instance of the defendant. It is alleged that this deed was put in the possession of Bryan, (since dead) for the purpose of drawing a deed of complainant’s land, to be executed by the defendant. Isaac Hardee was the defendant’s witness. He had married his sister, and held one of the tracts of land from his father-in-law under the same tenure. His tract was bid off at ninety-four dollars. He testified that he had given up his land “to be divided as old Jesse Sznith’s property. That he had paid thirty dollars, and- kept his piece of land.” That the defendant had not yet made him a title, but he considered him paid by the receipt. That his land and the complainant’s were included in No. 1.
Delivering an abstract of the title, or giving instructions to prepare deeds, will certainly not take a case out of the statute. But where the court is at liberty to seek for evidence of an agreement, such circumstances may be of no slight importance. The defendant bought four or five tracts. A separate deed is taken for two of the tracts, which are in possession of two persons, claiming under an agreement or understanding with the defendant. Both the witnesses to the deed testify their belief that the defendant was present at the execution thereof. Another witness testifies that he was present when Mr. Bryan mentioned to the defendant, or to others in presence of the defendant, that the defendant had delivered this deed to him (Bryan) with *139 instructions to draw a title to the complainant. The defendant never afterwards had the deed ; but, nearly four years after the sale of the land, applied to a succeeding sheriff, and, as the Chancellor says, on the false representation that he had never received a title from his predecessor, induced him to execute a deed for the tracts No. 1, including the complainant’s and Har-dee’s land. This latter deed bears date 4th September, 1835, and was the evidence of the defendant’s title on which the verdict at law was obtained.
But the testimony of Mr. Munro appears to the court to harmonize with the other facts as detailed by the witnesses, and to establish the existence, as well as the terms, of the agreement, beyond reasonable doubt, He testified that he was the attorney of the complainant in the trial at law on the note, That the discount offered by the defendant ’ was overruled by the presiding Judge, on the ground that he was not entitled to set up the discount, until he had proved that he had conveyed the land to the complainant. After the discount had been overruled, Mr. Bryan brought the parties together in the bar, the Judge suspending the cause, in order to allow time to effect an arrangement. That Mr. Bryan recapitulated, in presence of both parties, that defendant had purchased the land for ’ the -heirs. That complainant had become surety on the bond. That sheriff Sessions had executed a title, which was delivered by defendant to him (Bryan) with instructions to draw a title to the complainant. The witness went on to say, that the defendant then agreed, that if complainant would allow the thirty-one dollars, he would execute a title to him. That it (the discount,) was so entered on the verdict. That the defendant then instructed his lawyer, Mr. Cohen, to prepare the title, which he promised to do, that night, at his lodgings. The witness further said, that the amount of discount for which the defendant contended was more than thirty-one dollars \ his ground was that complainant should pay what the land sold for, and on this subject a good deal of testimony was introduced. Mr. Hardee and some of the heirs all got into the bar together. Jesse Smith (the defendant) agreed to it, and the witness wrote the verdict in his and Mr. Cohen’s presence. It seems -to the court, that the uninterrupted possession of the premises by the complainant after the sale in December, 1831 ; his possession of the title deed; the testimony of the defendant’s witness, Hardee, and the verdict of the jury, all unite in confirmation of the statement of *140 this witness. They establish an agreement to convey, payment of the purchase money, and a continuance in possession, of which no explanation has been attempted, but in reference to that agreement.
The court is of opinion that the defendant should execute a title to the complainant, according to the terms of their agreement, and that he should be restrained from enforcing his judgment at law; and it is so ordered and decreed.
Johnson and Johnston, CC. concurred.

) Vide the report of thi§ case in Rice Rep. p. 232.