23729

The SOUTH CAROLINA DEPARTMENT OF PARKS, RECREATION, AND TOURISM, Petitioner v. BROOKGREEN GARDENS, formerly known as Brookgreen Gardens, a Society for Southeastern Flora and Fauna, Respondent.

(424 S.E. (2d) 465)

Supreme Court

*William L. Pope* and *Kelly E. Shackelford,* both of *Pope & Rogers,* Columbia, *for petitioner.*

*M. Craig Garner, Jr.,* of *McNair Law Firm, P.A.,* Columbia, *for respondent.*

Heard Sept. 21, 1992.

Decided Oct. 14, 1992.

TOAL, Justice:

This case arises from a petition for original jurisdiction which was granted by the court pursuant to Rule 229, SCACR, dated March 25, 1992. The petition requests declaratory relief, based on the public interest and emergency conditions which exist, to determine the respective rights of the parties in property comprising what is now known as Huntington Beach State Park. We hold that Brookgreen Gardens (Brookgreen) possesses the title to the land in fee simple absolute.

## FACTS
The parties are in essential agreement on the facts. In 1931,

Archer M. Huntington and his wife Anna Hyatt Huntington organized and formed Brookgreen Gardens, a Society for Southeastern Flora and Fauna, as an eleemosynary corporation under the then existing laws of South Carolina. The corporation obtained title to what is now known as Huntington Beach through four separate grants between 1938 and 1941. The grants were joined by Anna Hyatt Huntington even though, on some deeds, her name was not required to convey the title. All of the grants purported in their habendum to create a right of re-entry or possibility of reverter to prevent the granted land from being utilized for any purpose other than what was allowed in the original charter for Brookgreen.

In 1955 Mr. Huntington died leaving as his sole heir Anna Hyatt Huntington. On May 13, 1960, Brookgreen entered into a fifty (50) year lease with the Forestry Department, as the forerunner in interest to the South Carolina Department of Parks, Recreation, and Tourism, (hereinafter referred to as PRT), to operate Huntington Beach as a state park for the benefit of the citizens of South Carolina and other members of the public. This lease was subject to court approval. The following June, Anna Hyatt Huntington executed and delivered a Deed of Real Estate, and Release in which she conveyed, released, and discharged, "all rights she had as a possibility of reverter or as a right of re-entry, which might then exist or arise in favor of herself individually or as the sole heir of her husband."

Forestry (PRT), in April of 1960, initiated a declaratory action to determine the rights of the parties and determine the validity of the May lease. Judge G. Badger Baker, of the Twelfth Judicial Circuit, in a decree dated October 3, 1960, found that the Huntington's conveyances to Brookgreen were originally fee simple determinable estates. He further found that Anna Hyatt Huntington, as the sole heir of her deceased husband, had the power and right to release to Brookgreen any possibility of reverter or re-entry rights, and that the result of such release was to create in Brookgreen an estate in fee simple absolute. These findings led Judge Baker to the conclusion that the lease between Forestry (PRT) and Brookgreen was valid and consistent with the powers the Huntingtons created in Brookgreen.

Since Judge Baker's decree in 1960, there has been no ap-

peal or other challenge to the title vested in Brookgreen. Huntington Beach State Park has operated in accordance with the lease to the benefit of millions of citizens and tourists. During this same period, the State of South Carolina has spent over $19 million in improvements to the park. In 1989, hurricane Hugo destroyed or damaged several of the improvements and it is from this natural disaster the current question appears.

PRT seeks permission from Brookgreen to reconstruct, and to obtain Brookgreen's approval for a master plan for facilities improvements; Brookgreen, however, is reluctant to proceed without a further clarification of their rights in relation to Huntington Beach. The deadline for FEMA funding is rapidly approaching and it sets the stage for this clarification of rights under the Court's original jurisdiction.

## Law/Analysis

PRT and Brookgreen have raised essentially the same issue. Whether the delivery of the Deed of Real Estate, and Release, signed by Anna Hyatt Huntington, converted Brookgreen's estate in Huntington Beach into a fee simple absolute estate, and if so, what property was actually conveyed to Brookgreen Gardens in fee simple absolute?

The threshold questions to answer are what type of estate was originally granted to Brookgreen, and what is the future interest which follows the original grant. The four grants contained the common language of:

> TO HAVE AND TO HOLD all and singular the premises above mentioned unto the said Brookgreen Gardens . . . and to its successors but not to its assigns, upon the terms, covenants and conditions following . . ., and when the same shall cease to be used for such purposes or so maintained, said premises shall immediately revert to the grantors or their heirs.

Unfortunately the grant did not stop there and the following ambiguous language was added: "[t]he grantors, or their heirs, upon breach of said condition shall be entitled to enter upon and take possession of said premises in the same manner as if this conveyance had not been made."

The language of the Huntington's four grants, which encom-

pass Huntington Beach, appears to create a fee simple determinable estate in Brookgreen. "A fee simple determinable is an estate in fee 'with a qualification annexed to it by which it is provided that it must determine whenever that qualification is at an end.'" *Purvis v. McElveen*, 234 S.C. 94, 98, 106 S.E. (2d) 913, 915 (1959), citing 19 Am. Jur., *Estates*, Par. 28, p. 486; *See* 28 Am. Jur. (2d), *Estates* § 22, p. 99. The wording of the grant would allow for a defeasance of the grantee "upon the terms, covenants and conditions" of the grant. The defeasance was conditioned on the use of Huntington Beach for nonresidential purposes, and the maintenance of the land in its natural state. This was clearly intended to allow Brookgreen Gardens to pursue its corporate objective to "exhibit and preserve flora and fauna of South Carolina and objects of art; to acquire land, and to acquire, build and or maintain a suitable building or buildings . . . for such exhibition. . . ." Brookgreen Certificate of Incorporation. It is apparent from the deeds that the grant was in fee simple determinable.

The future interest which accompanies the fee simple determinable is the possibility of reverter. *Purvis* at 99, 106 S.E. (2d) at 916; 28 Am. Jur. (2d), *Estates*, § 182, p. 319. The initial determination of the type of grant, as a fee simple determinable, assists greatly in resolving the ambiguous language set forth in the original Huntington grants. Because the future interest is a possibility of reverter, the extra wording which sounds in right of reentry can be interpreted as merely describing the method of reclaiming the land. It is apparent that Archer M. Huntington's original intent was for a possibility of reverter to arise, this interpretation stems from the use of "said premises shall immediately revert to the grantors or their heirs," in the habendum clauses. The ambiguity which follows can only be interpreted as describing, in too much detail, Archer Huntington's intent.

The characterization of the estate simplifies the rest of the analysis. A possibility of reverter has been held in South Carolina as nontransferable by will to a non-heir, or by inter vivos alienation to a third party; however, it may be released to the party holding the fee simple determinable. *Purvis* at 94, 106 S.E. (2d) 913; *See also County of Abbeville v. Knox*, 267 S.C. 38, 225 S.E. (2d) 863 (1976). Because Anna Hyatt Huntington was the sole heir of Archer M. Huntington,

any possibility of reverter rights would belong to her upon the death of Archer M. Huntington. In June 1960, Anna Hyatt Huntington executed and delivered a Deed of Real Estate, and Release, which acted to release her possibility of reverter to Brookgreen Gardens. As the fee simple determinable holder, the release serves to eliminate the condition on the fee simple determinable estate, rendering the possessory interest a fee simple absolute. 28 Am. Jur. (2d), Estates, Sec. 185 p. 326; *Purvis* at 99, 106 S.E. (2d) at 916; *Burnett v. Snoddy*, 199 S.C. 399, 19 S.E. (2d) 904 (1942). Judge Baker arrived at this same conclusion in his findings in 1960, and today it is still correct.

The thornier portion of the issue is the question of what property was actually conveyed to Brookgreen.

Anna Hyatt Huntington's 1960 Deed of Real Estate, and Release, describes the property released as the "real property east of U.S. Highway 17, which is bounded by specified creeks on the north, by the Atlantic Ocean on the east, by Retreat Beach on the south, and by U.S. Highway 17 on the west." The land thus described was actually conveyed to Brookgreen in four separate conveyances. The parties do not dispute, and the facts show, that the lease entered into by PRT covers the same boundaries as described in the Deed of Real Estate, and Release.

Both parties also agree that the discrepancy in description and derivation is immaterial. Citing *Brownlee v. Miller*, both parties ask this Court to reaffirm the rule that the legal description in a deed governs conflicting derivation information. 208 S.C. 252, 37 S.E. (2d) 658 (1946). This appears from the cases to be a long-standing rule in South Carolina, and we will continue to accord it great weight. *See McNair v. Johnson*, 95 S.C. 176, 78 S.E. 892 (1913); *Norwood v. Byrd*, 18 S.C. Eq. (1 Rich. Eq.) 135 (1844). The conflict in the derivation of title should have no effect on the state of the title. We hold that the legal description in the Deed of Real Estate, and Release, and the land as granted to Brookgreen under the four separate conveyances, reaches all of the land in dispute and comprises the boundaries of Huntington Beach.

Petitioner raises a choice of law issue concerning the citizenship of Anna Hyatt Huntington. PRT takes the position that even though she was a citizen of Connecticut, the land is found in South Carolina, and the law of

South Carolina should apply to determine the state of title, and the estate interest involved. This is the rule followed in *Leasing Enterprises, Inc. v. Livingston*, 294 S.C. 204, 363 S.E. (2d) 410 (Ct. App. 1987), and the *Restatement (Second) of Conflicts*, § 223(1) (1971), which provides that "[t]he law of the situs would be applied to determine whether a conveyance transfers an interest in land and the nature of the interest transferred." This analysis clearly places the question of the type of estate and the release within the ambit of South Carolina law.

Petitioner raises the argument, that even if any heirs were to exist, their claim would be barred by laches.

This laches or stale claims argument is rendered moot by the character of the estate which Brookgreen possesses. If any heir existed, there could be no claim since the possibility of reverter was released by Anna Hyatt Huntington, and, as a result, a fee simple absolute was created in Brookgreen.

Brookgreen held the title to Huntington Beach in fee simple determinable. This title was granted by four separate conveyances which were conditioned on the use of the property consistent with the corporation's charitable goals. The grants provided for a possibility of reverter, and although there was ambiguous language present, the extra wording contained in the possibility of reverter was merely an overstated instruction to the heirs to immediately, upon failure of the condition, re-enter the land. This possibility of reverter was validly released by Anna Hyatt Huntington in 1960, creating in Brookgreen a fee simple absolute. The character of the estate would validate any lease agreements entered into by Brookgreen with PRT, and would allow for the future development of the beach consistent with Brookgreen's charter as a charitable corporation.

We, therefore, hold that Brookgreen Gardens possesses title in the land, known as Huntington Beach, in fee simple absolute.

HARWELL, C.J., and CHANDLER, FINNEY and MOORE, JJ., concur.