604 S.E.2d 704

**N. David DuRANT, Appellant,**

v.

**SOUTH CAROLINA DEPARTMENT OF HEALTH AND ENVIRONMENTAL CONTROL, Office of Ocean and Coastal Resource Management, Brookgreen Gardens, and South Carolina Department of Parks, Recreation, and Tourism, Respondents.**

**No. 3865.**

Court of Appeals of South Carolina.

Heard April 7, 2004.
Decided Sept. 20, 2004.
Rehearing Denied Nov. 19, 2004.

Connie C. Harness, III, of Mt. Pleasant, for Appellant.

Betty J. Willoughby and M. Craig Garner, Jr., both of Columbia and Leslie West Stidham, of Charleston, for Respondents.

CURETON, A.J.:

N. David DuRant filed an administrative appeal of à decision by the South Carolina Department of Health and Environmental Control's Office of Ocean and Coastal Resource Management which denied him a permit to construct a private

dock. After Brookgreen Gardens and the South Carolina
Department of Parks, Recreation, and Tourism intervened in
the appeal, the administrative law judge affirmed the denial of
the permit. On appeal to the circuit court, the findings of the
administrative law judge were affirmed. DuRant appeals.
We affirm.

## FACTS

DuRant and another individual are co-owners of two lots
located across from Huntington Beach State Park and bound-
ed by Oaks Creek and a marsh. The deed to this property
does not reference the high water mark of the marsh. Du-
Rant applied to the Office of Ocean and Coastal Resource
Management (Resource Management) for a permit to con-
struct a private walkway from one of the lots to a fixed pier
head and a floating dock.[1] There are no private docks or piers
located along Oaks Creek.

The South Carolina Department of Parks, Recreation, and
Tourism (Department)—through Huntington Beach State
Park—conducts kayak excursions along Oaks Creek and the
marsh. The Department also has a bird-watching program
that conducts tours in this marsh area, as it is a habitat for
many birds.

The Department has leased the land upon which Huntington
Beach State Park is located from Brookgreen Gardens (Brook-
green) since 1960. Because Oaks Creek is a boundary of this
leased property, it abuts DuRant's lots. Brookgreen has
record title to the marsh around Oaks Creek from a deed
recorded in 1938. The deed specifically conveyed to Brook-
green "all right, title and interest of the grantors of, in and to
the beds of ... Main or Oaks Creek ... and the marshes,
mud flats and bodies of water not herein specifically named."
By 1942, the South Carolina General Assembly had designated
Brookgreen's lands—including all waters entering those
lands—as a wildlife sanctuary. *See* S.C.Code Ann. § 50–11–
950 (Supp. 2003) ("The lands owned by Brookgreen Gardens
... and all streams, creeks, and waters, fresh, salt or mixed,

---

1. The lots' co-owner was not listed on this application.

entering into the lands are established as a sanctuary for the protection of game, other birds, and animals. . . .").

Regardless of the legislature's designation of Brookgreen's lands as a wildlife sanctuary, the marsh area at issue is located in a 990–acre plot that is part of the State Heritage Trust Program. This designation was accomplished by a registration agreement executed in 1985 by the Department, Brookgreen, and the South Carolina Wildlife and Marine Resources Department.[2] The agreement provides that this property, like all Heritage Trust sites, is to be maintained "in its essential natural state."

Based on all of this information, Resource Management denied DuRant's dock and permit application, finding the marsh area at issue was a Geographical Area of Particular Concern (GAPC) under the Coastal Zone Management Act, and thus entitled to heightened protection.[3] This decision to find the property was a GAPC was supported by two findings: (1) the marsh area is a portion of the property managed by the Department as a State Park, and (2) the marsh area is part of the property included in the Heritage Trust Program.

DuRant appealed Resource Management's denial to the Administrative Law Judge Division. The Department and Brookgreen were subsequently permitted to intervene.[4] The administrative law judge (ALJ) affirmed Resource Management's denial of the permit application. DuRant then appealed this decision to the Coastal Zone Management Appellate Panel (Appellate Panel). After a hearing based upon the record presented to the ALJ, the Appellate Panel adopted and

---

2. This department was eventually succeeded by the South Carolina Department of Natural Resources.

3. GAPCs are areas within the state's coastal zone "which have been identified in the State's Coastal Management Program as being of such importance as to merit special consideration during Department review of permit applications." 23A S.C.Code Ann. Regs. 30–1(D)(22) (Supp. 2003). GAPCs include areas: (1) of "unique natural resource value;" (2) where "activities, development, or facilities depend on proximity to coastal waters, in terms of use or access;" and (3) of "special historical, archeological or cultural significance." *Id.*

4. Resource Management, the Department, and Brookgreen shall be referred to collectively as Respondents.

affirmed the ALJ's order. DuRant appealed the Appellate Panel's decision to the circuit court. After a hearing based upon the record presented to the court, the circuit court judge affirmed the Appellate Panel's order. This appeal followed.

## STANDARD OF REVIEW

In an appeal of the final decision of an administrative agency pursuant to the Administrative Procedures Act, the standard for appellate review to the Appellate Panel is whether the ALJ's findings are supported by substantial evidence under section 1–23–610(D). S.C.Code Ann. § 1–23–610(D) (Supp. 2003); *Dorman v. S.C. Dep't of Health & Envtl. Control*, 350 S.C. 159, 165, 565 S.E.2d 119, 122 (Ct.App.2002). In determining whether the ALJ's decision was supported by substantial evidence, this court need only find, looking at the entire record on appeal, evidence from which reasonable minds could reach the same conclusion that the administrative agency reached. *Grant v. S.C. Coastal Council*, 319 S.C. 348, 353, 461 S.E.2d 388, 391 (1995). The mere possibility of drawing two inconsistent conclusions from the evidence does not prevent a finding from being supported by substantial evidence. *Id.* (citation omitted).

## LAW/ANALYSIS

### I.

DuRant argues the circuit court erred in finding Respondents—specifically Resource Management—followed proper legal procedure in denying the dock permit application and declaring the marsh area at issue a GAPC. DuRant argues Resource Management could not declare the marsh a GAPC unless Brookgreen established title to the marsh and challenged the dock permit application. We do not agree.

Initially, we address DuRant's apparent contention that Resource Management should have been able to somehow discount or void both the Heritage Trust registration agreement and the lease of the Huntington Beach State Park property from Brookgreen to the Department. Clearly, Resource Management, as an office within the state agency of the Department of Health and Environmental Control

(DHEC), must act only within the authority granted to it by the legislature. *See, e.g., City of Rock Hill v. S.C. Dep't of Health & Envtl. Control,* 302 S.C. 161, 165, 394 S.E.2d 327, 330 (1990) ("As creatures of statute, regulatory bodies such as DHEC possess only those powers which are specifically delineated.") (citation omitted). Resource Management's authority is set out in the Coastal Zone Management Act (the Act). S.C.Code Ann. §§ 48–39–10 to –360 (Supp. 2003). The Act does not mention, however, any power vested in Resource Management to void, discount, or overlook a contract. This is especially relevant in the instant case as Resource Management was not a party to either the registration agreement or the lease.

Regardless, we find Resource Management followed proper procedure in denying DuRant's dock permit application. The Act specifically defines "critical areas" to include marshes contiguous or adjacent to coastal waters. S.C.Code Ann. §§ 48–39–10(G), (J)(2) (Supp. 2003). The Act further states that one cannot "utilize a critical area for a use other than the use the critical area was devoted to" without getting approval from Resource Management. S.C.Code Ann. § 48–39–130(A) (Supp. 2003). The Act then sets forth several considerations to be taken into account by Resource Management in determining whether to grant such approval. S.C.Code Ann. § 48–39–150 (Supp. 2003). Two such considerations are the extent to which development could affect existing public access and the extent to which the proposed use could affect the adjacent owners. S.C.Code Ann. §§ 48–39–150(A)(5), (10). (Supp. 2003).

In reviewing DuRant's permit application, Resource Management necessarily had to determine whether the area is a GAPC. In fact, with regard to issues involving "critical areas" such as marshes, Resource Management must be guided by "[t]he extent and significance of negative impacts" on GAPCs. 23A S.C.Code Ann. Regs. 30–11(C)(3) (Supp. 2003). Moreover, Resource Management's Coastal Management Program (CMP) document[5] lists eight specific types of properties that

---

5. The Act specifically states Resource Management must formulate a Coastal Management Program. However, the CMP is neither codified nor a part of a DHEC regulation.

are GAPCs—two of these properties are Heritage Trust sites and State Parks.

We find Resource Management properly reviewed all of these statutory considerations in determining the marsh area in question was a "critical area" and a GAPC. First, it is clear the marsh abutting DuRant's property was a "critical area" under section 48–39–10. As such, any alteration to this area— such as the construction of a dock—required Resource Management approval under section 48–39–150. Accordingly, Resource Management examined the considerations set forth in that section. The Department regularly used the Oaks Creek area—including the marshes—for kayak excursions and bird-watching trips from Huntington Beach State Park. It is clear the construction of a dock would affect both public access to the marsh and the adjacent landowners.

Second, we find it is equally clear the subject marsh qualifies as a GAPC. Regulation 30–1(D)(22) defines GAPCs as consisting of "areas where activities, development, or facilities depend on proximity to coastal waters, in terms of use or access." 23A S.C.Code Ann. Regs. 30–1(D)(22) (Supp. 2003). The marsh on Oaks Creek certainly satisfies this definition. The Department's activities conducted on the creek and in the marshes clearly depend upon the proximity to coastal waters and to the State Park. In addition, the designation of the State Park property (including the marshes along Oaks Creek) as Heritage Trust property would arguably classify the land as an area of "cultural significance," which is another description of a GAPC under Regulation 30–1(D)(22). Furthermore, it was noted by Resource Management, the ALJ, the Appellate Panel, and the circuit court judge that the Coastal Management Program document states both Heritage Trust properties and State Parks qualify as GAPCs. Thus, as the marsh in question is along Oaks Creek, and Oaks Creek is a border of a

_____

The CMP was published as a special edition of the State Register, 2 State Register (No. 26, Oct. 1978), and is reflected in the 'CMP document.' 'Refinements' to the CMP document appear in the State Register. *See* 17 State Register, Issue 5, Part I, pp. 155–56 (May 1993); 17 State Register, Issue 6, pp. 55–56 (June 1993). These refinements were approved by the General Assembly and Governor. *Brown v. S.C. Dep't of Health & Envtl. Control,* 348 S.C. 507, 517, 560 S.E.2d 410, 415 (2002).

State Park, that marsh can be brought in under the GAPC status. In any case, as the CMP specifies that Heritage Trust sites and State Parks are GAPCs—and Huntington Beach State Park undoubtedly qualifies as both—the marsh along Oaks Creek would be part of that GAPC.

Therefore, at a minimum, the land abutting Oaks Creek that is managed by the Department as Huntington Beach State Park qualifies as a GAPC. The Coastal Management Program document clearly states that "when a project overlaps with, is adjacent to, or significantly affects a GAPC, [Resource Management] will carefully evaluate" the project, and the project would be prohibited if it would "permanently disrupt the use of priority for the designated area." [6] As the subject marshes are adjacent to the State Park, it was within Resource Management's authority to prohibit DuRant's proposed dock. Resource Management concluded the construction of the dock would permanently disrupt the ability of the Department to utilize the State Park for recreational and educational opportunities along the Oaks Creek marsh. As such, Resource Management found the marshes along DuRant's property were a part of the GAPC designated as Huntington Beach State Park.

We further find that both Respondents and DuRant followed all application and notice provisions. The Act specifies that, prior to any construction in a "critical area," notice must be published to the adjoining landowners. 23A S.C.Code Ann. Regs. 30–2(B)(5), (B)(7), (I)(2) (Supp. 2003). These landowners can then file written comments about the project. 23A S.C.Code Ann. Regs. 30–2(E) (Supp. 2003). If an adjoining landowner objects based upon an ownership dispute, the landowner may file an action against the State. *See* S.C.Code Ann. § 48–39–220(A) (Supp. 2003) ("Any person claiming an interest in the tidelands ... may institute an action against the State of South Carolina for the purpose of determining the existence of any right, title or interest of such person in and to such tidelands as against the State."). If neither written

---

6. The CMP lists the following as the priority of uses for a State Park: (1) varied recreational activities open to the public; (2) non-intensive uses which require minimal feasible alteration and maintain the natural function of the area; and (3) provision of educational opportunities to visitors of the parks. 2 S.C. Reg. Issue 26, Part IV–17.

objection is received, nor action instituted pursuant to section 48–39–220(A), "the permit will be processed pursuant to law." 23A S.C.Code Ann. Regs. 30–2(I)(3) (Supp. 2003).

In the instant case, Brookgreen, as the owner of the land leased to the Department, was an adjoining landowner to DuRant's proposed dock. Brookgreen was notified and objected with written comments. Brookgreen, however, did not institute an action to establish title under section 48–39–220(A), and DuRant's dock permit application was processed by Resource Management. While DuRant argues that Brookgreen's failure to file suit against the State is an admission that it does not have a title interest in the property, we find this argument is without merit. DHEC regulations clearly state that, without written proof of filing a court action, a permit application will be processed. That is precisely what happened in this case.

Thus we find that, whether or not Brookgreen has record title to the subject marsh abutting DuRant's property, Resource Management properly determined the area had GAPC status as both a Heritage Trust site and a state park. Further, at a minimum, we note Brookgreen has colorable title to the area in question. *See S.C. Dep't of Parks, Recreation, & Tourism v. Brookgreen Gardens,* 309 S.C. 388, 394, 424 S.E.2d 465, 468 (1992) (concluding Brookgreen "possesses title in the land, known as Huntington Beach, in fee simple absolute").

Accordingly, the circuit court did not err in finding Respondents followed proper procedure in denying the dock permit application and declaring the marsh area was a GAPC.

## II.

■ DuRant argues the circuit court erred in finding Respondents' actions did not violate DuRant's rights of due process and equal protection. We do not agree.

While DuRant made vague comments about "some Constitutional claims" to the ALJ, he did not raise the specific issues of either due process or equal protection at that time. In fact, DuRant informed the ALJ that, with regard to these Constitutional issues, he would "reserve [them] for circuit court." However, these issues were never raised or ruled upon by the ALJ, the Appellate Panel, or the circuit court. Accordingly,

DuRant's issues concerning the violation of his due process and equal protection rights are not preserved for review by this court. *See Wilder Corp. v. Wilke,* 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) ("It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review.").

## CONCLUSION

Reviewing the evidence in the record, it is apparent that Resource Management followed all applicable procedures in reviewing and denying DuRant's permit application. Resource Management determined that the marsh was a GAPC, entitled to heightened protection, because it was a Heritage Trust property and a state park. The substantial evidence in the record supports this finding. Accordingly, the circuit court's order affirming the decision of the Coastal Zone Management Appellate Panel is

**AFFIRMED.**

HUFF and STILWELL, JJ., concur.