THIS OPINION HAS NO
 PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY
 PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Stephen Vaughn, Appellant,
 v.
 South Carolina
 Department of Health and Environmental Control and Beresford Creek
 Homeowners Association, Respondents.
 
 
 

John D. Geathers, Administrative Law Court
 Judge

Unpublished Opinion No. 2007-UP-513
Submitted November 1, 2007  Filed November 7, 2007    

AFFIRMED

 
 
 
 Mary. D. Shahid, of Charleston, for Appellant.
 Leslie S. Riley and James D. Myrick, both of Charleston, for
 Respondents.
 
 
 

PER CURIAM: This
 is an appeal of an Administrative Law Court (ALC) order affirming a decision of
 the South Carolina Department of Health and Environmental Control (DHEC),
 Office of Ocean and Coastal Resource Management (OCRM), denying a dock permit
 to Appellant, Stephen Vaughn.  Vaughn argues the ALC erred in finding his
 property (the Lot) was not waterfront property and in refusing to allow
 modification of the subdivisions dock master plan to include a dock corridor
 for the Lot.  Vaughn also claims the denial of a dock permit violated his
 constitutional rights to Equal Protection under the laws of South Carolina.  We
 affirm[1].  
FACTS
Vaughn entered into a contract to purchase
 the Lot on Rivershore Drive in the Beresford Creek Subdivision (the
 Subdivision) on Daniel Island.[2] 
 The Lot was not indicated on the dock master plan as having an approved dock
 corridor.  Vaughn filed an application with OCRM to obtain a permit to build a
 private dock on the Lot.  The proposed dock consisted of a 4 foot by 620 foot
 walkway with handrails leading to a 20 foot by 20 foot fixed pierhead with a
 roof and handrails.  The proposed dock included an attached 10 foot by 20 foot
 floating dock and a 12 foot by 20 foot six-pile boatlift.  
Vaughn
 requested a meeting with OCRM staff through his elected representative, Shirley
 Hinson.  OCRM Deputy Commissioner Chris Brooks and Permitting Director Richard
 Chinnis met with Vaughn in October 2004 to discuss the pending dock permit. 
 
In the
 beginning of November 2004, OCRM denied Vaughns permit application on the
 ground the Lot was not waterfront property as defined by OCRM regulations.  First,
 OCRM found the Lots projected property lines d[id] not intersect with the
 creek [within] 1000 as required by OCRM regulations.  Second, OCRM found the Lot did not possess a dock corridor on [an OCRM] approved dock master plan for the
 Subdivision.  
Vaughn
 filed a request for a contested case with the ALC.  The Beresford Creek
 Homeowners Association (Association) moved to intervene as a party to the
 contested case, and the ALC granted the Associations motion.  A hearing was
 held in August 2005.  The ALC affirmed OCRMs decision denying a dock permit to
 Vaughn, finding the Lot was not waterfront property as defined by regulations. 
 
On November
 4, 2005, Vaughn commenced an appeal of OCRMs denial of the dock permit to the
 Coastal Zone Management Appellate Panel (the Panel).  Vaughn averred the ALC
 erred in finding the Lot was not waterfront property and by refusing to allow
 modification of the dock master plan to include a dock corridor for the Lot. Vaughn also claimed the denial of his permit violated his constitutional rights to
 Equal Protection under the laws of South Carolina.  During the pendency of the
 appeal, Act 387 (the Act) was signed into law[3] which substantively amended DHECs administrative and permitting procedures,
 including amendments to the procedure of appeal from the ALC.[4]  Pursuant to the Act, Vaughn filed
 and served his notice of appeal with this court on July 3, 2006. 
STANDARD OF REVIEW
In contested permitting
 cases, the ALC serves as the finder of fact.  Brown v. S.C. Dept of Health
 & Envtl. Control, 348 S.C. 507, 520, 560 S.E.2d 410, 417 (2002).  On
 appeal, this court may not substitute its judgment for that of an agency on
 questions of fact when those facts are supported by substantial evidence.  Dorman
 v. Dept. of Health & Envtl. Control, 350 S.C. 159, 565 S.E.2d 119 (Ct.
 App. 2002); See Al-Shabazz v. State, 338 S.C. 354, 380, 527
 S.E.2d 742, 756 (1999).  In
 determining whether the ALCs decision was supported by substantial evidence,
 this court need only find, looking at the entire record on appeal, evidence
 from which reasonable minds could reach the same conclusion that the
 administrative agency reached.  DuRant v. S.C. Dept of Health & Envtl.
 Control, 361 S.C. 416, 420, 604 S.E.2d 704, 706 (Ct. App. 2004).  The mere
 possibility of drawing two inconsistent conclusions from the evidence does not
 prevent a finding from being supported by substantial evidence.  Id. at 420, 604 S.E.2d at 707. 
 
LAW/ANALYSIS 
I.  Waterfront Property
Vaughn contends the ALC erred in finding the Lot was not waterfront property.  Vaughn first asserts
 the Lot meets the regulatory requirements of waterfront property, and
 alternatively, he argues OCRM and the ALC improperly used the regulatory
 definition of waterfront property in denying his dock permit.  We disagree.
 
The regulatory
 definition of waterfront property, as found in Regulation 30-1(D)(52) of the
 South Carolina Code (Supp. 2006), provides: 

 For
 purposes of these regulations, waterfront property will generally be defined as
 upland sites where a straight-line extension of both, generally shore
 perpendicular, upland property lines reaches a navigable watercourse within
 1000 of the marsh critical line.  Waterfront property may also be identified
 via an approved dock master plan where designated corridors differing from
 upland property line extensions are delineated.

In this case, the ALC found
 the Lot did not comport to either of the two definitions of waterfront property
 contained in the regulations.  
A.  Straight-Line
 Extension of the Lots Property Lines
The
 ALC found the straight-line extensions of both of the Lots generally shore perpendicular,
 upland property lines do not reach Beresford Creek or any other navigable
 waterway within 1000 feet of the Lots marsh critical line.  Vaughn argues the
 testimony of his civil engineer, Greg Jones, demonstrates how an extension of
 the upland property boundaries of the Lot satisfies the 1000 feet requirement
 contained in the definition. However, as noted by the ALC, Jones did not extend
 the upland property lines of the Lot, as required by the regulatory definition,
 to reach his conclusion.[5]  The ALC explained Jones extended the eastern shore-perpendicular, upland
 property line by creating an angle at the critical line and beginning a new
 line towards Beresford Creek, instead of simply extending the property boundary
 in a straight line.  For the second extension, Jones extended a segment of
 the [OCRM] critical line towards Beresford Creek, rather than extending the
 other shore perpendicular upland property line of [the] [L]ots western
 property.  We find substantial evidence to support the ALCs determination the
 Lot was not waterfront property according to the first definition of
 waterfront property provided in the regulations.  Accordingly, we find no error
 in the ALCs determination.  
Regardless
 of whether the Lots straight-line extensions met the required length, Vaughn
 asserts OCRM and the ALC erred in using the regulatory definition of waterfront
 property for the purpose of establishing criteria for the issuance or denial of
 a permit application.  Vaughn claims the definition of waterfront property
 provided in Regulation 30-1(D)(52) should have been used only for the purposes
 of providing guidance in the interpretation of other regulations.  Vaughn
 suggests that the permit application should have been considered in the context
 of South Carolina Code Regulation 30-12, specifically Regulation
 30-12(A)(1)(e).[6] 
 Regulation 30-12 sets forth specific project standards for tidelands and
 coastal waters.  Regulation 30-12(A)(1), specified by Vaughn, lists the
 standards for the construction of docks and piers.  
We note
 OCRM and the ALC did not err in using Regulation 30-1(D)(52) to determine the
 Lot was not waterfront property.  The South Carolina Coastal Zone Management
 Act was passed to protect and enhance the States coastal resources.  S.C. Code
 Ann. §§ 48-39-10 to 360 (Supp. 2006); S.C. Code Ann. Regs. 30-1 (Supp. 2006).  The
 Lot is located in a critical area within the South Carolina coastal zone.  See S.C. Code Ann. Regs. 30-1(D)(14) (Supp. 2006) (defining critical areas as
 (1) coastal waters, (2) tidelands, (3) beach/dune systems and (4) beaches). 
 Therefore, one must apply for a dock permit when seeking to construct a dock. 
 S.C. Code Ann. Regs. 30-2 (B) (Supp. 2006) (requiring any person wishing to
 alter a critical area [to] receive a permit).  The regulations promulgated
 pursuant to the South Carolina Coastal Zone Management Act cloak OCRM with authority
 to carry out South Carolinas coastal zone policies, including the power to
 issue permits for docks and piers.  S.C. Code Ann. Regs. 30-10(A)(1) (Supp.
 2006); S.C. Code Ann. §48-39-130 (Supp. 2006).  The first general consideration
 OCRM is required to weigh in determining whether to issue a dock permit, or any
 other critical area permit, is [t]he extent to which the activity requires a
 waterfront location or is economically enhanced by its proximity to water. 
 S.C. Code Ann. Regs. 30-11(B)(1) (Supp. 2006).  The construction and use of a
 dock are clearly activities that require a waterfront location.  See, e.g.,
 S.C. Code Ann. Regs. 30-12(A)(1) (Supp. 2006) (describing a dock as a
 structure built over and/or floating on water . . . generally used for the
 mooring of boats).  Therefore, as the ALC noted: 

 [W]hile
 Regulation 30-1(D)(52) is a purely definitional section, not a substantive dock
 permitting regulation, the definition of waterfront property provided in that
 section is important for determining whether a proposed dock project is located
 in a waterfront location and thus can satisfy the first general consideration
 for evaluating critical area activities under the Coastal Zone Management Act
 and OCRMs regulations. 

Accordingly, OCRM
 and the ALC properly considered Regulation 30-1(D)(52) to determine the Lot was not a waterfront property.
 
B.  Identification on
 a Dock Master Plan
The ALC also found
 the Lot was not identified on a dock master plan for the Subdivision, such as to
 satisfy the second definition of waterfront property.  The ALC acknowledged Vaughns
 efforts to have the dock master plan amended to include a dock corridor for the
 Lot, but concluded the Lot was not identified as waterfront property with a
 dock corridor on the most current version of the dock master plan.  
Vaughn again
 asserts OCRM and the ALC erred in using the regulatory definition of waterfront
 property.  Vaughn contends nothing in the regulations mandates a denial of a
 dock permit if a lot does not have an established dock corridor on an approved
 dock master plan.  Vaughn suggests the regulations only require a dock master plan
 be used as a framework for future permitting decisions.  Thus, Vaughn asserts
 it was unlawful regulation and an error of law for OCRM and the ALC to base
 their denial on the fact the Lot was not indicated in the dock master plan.
 
As discussed above, OCRMs and the ALCs reliance on the definition of waterfront property and the
 adherence to the requirements contained in the definitions were proper.  Further,
 we find substantial evidence to support the ALCs determination that the Lot was not waterfront property according to the second definition of waterfront property
 provided in the regulations.  Accordingly, we find no error in the ALCs
 determination.
II.  Modification
Vaughn also claims
 the ALC erred in not allowing the dock master plan to be modified.  Vaughn
 argues modification of the dock master plan was proper based on new information
 regarding the Lot and the Subdivisions restrictive covenants did not prevent a
 modification of the dock master plan, as asserted by the ALC.  
The ALC did not
 actually make the ruling which Vaughn raises to this court.  The ALC noted in
 its findings of fact that the Lot was subject to the terms and conditions of
 the Subdivisions Declaration of Covenants, Conditions and Restrictions, but
 did so to illustrate the Lot was not indicated on the current version of the dock
 master plan.  Nowhere within its order does the ALC indicate that the dock
 master plan may not be modified in the future.  Accordingly, this issue is not
 preserved for our review, and we decline to address it.  In re Michael H., 360 S.C. 540, 546, 602 S.E.2d 729, 732 (2004) (holding that issues must be
 raised and ruled upon in the trial court to be preserved for appellate review); Ellie, Inc. v. Miccichi, 358 S.C. 78, 103, 594 S.E.2d 485, 498 (Ct. App.
 2004) (finding without an initial ruling by the trial court, a reviewing court
 simply would not be able to evaluate whether the trial court committed error). 
 
III.  Equal Protection
Lastly, Vaughn
 contends his rights to Equal Protection were violated by the ALCs decision. 
 The gravamen of Vaughns argument is that he is similarly situated to several
 other lot owners in the Subdivision who have obtained dock permits.  We
 disagree.  
Vaughn is in a
 different position than the other lot owners in the Subdivision because the Lot was never depicted on the dock master plan as showing a dock corridor.  The other lots
 in the neighborhood, which have obtained dock permits, are shown on the dock
 master plan as having a dock corridor.  Thus, we find Vaughn is not similarly
 situated to others in the Subdivision, and the ALCs order does not violate
 Vaughns constitutional rights.  
CONCLUSION
We find substantial evidence to support the ALCs
 determination that the Lot was not waterfront property according to the
 definition of waterfront property provided in the regulations and thus, find no
 error in the ALCs determination.  Further, we find reliance on the regulatory
 definition of waterfront property in determining the Lot was not waterfront property
 was proper.  Next, we hold Vaughns claim the ALC erred in not allowing the dock
 master plan to be modified is not preserved for our review.  Lastly, we hold
 Vaughns constitutional rights were not violated by the ALCs decision.  Based
 on the foregoing, the final order of the ALC is
AFFIRMED.
ANDERSON and THOMAS, JJ., and GOOLSBY, A.J., concur. 
 

[1] We decide this case without oral argument
 pursuant to Rule 215, SCACR.
[2] After Vaughn filed this appeal, the Lot was sold to
 SDJ, LLC, an entity in which Vaughn is a principal.  
[3] The effective date of the Act is July 1, 2006.  
 
[4] Prior to the enactment of the Act, the Panel had
 jurisdiction to review final decisions of the ALC.  S.C. Code Ann. § 1-23-610
 (2005) amended by Act 387 §5 (codified at S.C. Code Ann. §1-23-610 (Supp.
 2006)).  Under the Act, the court of appeals now has jurisdiction over appeals
 from final decisions of the ALC.  See Act 387 §§ 5, 15.   Section 57
 requires the Act to apply to any actions pending on or after the effective
 date.  However, it also creates an exception to this general rule of
 applicability and mandates the former law continue to apply to appeals of Department
 of Health and Environmental Control, Ocean and Coastal Resource Management and
 Environmental Quality Control permits that are before the Administrative Law
 Court on the effective date of this act and petitions for judicial review that
 are pending before the circuit court.  See Chem-Nuclear Syss., LLC v. South Carolina Bd. of Health and Envtl. Control, 374 S.C. 201, 206, 648 S.E.2d 601, 604 (2007).    
[5] The ALC found the testimony of Jones was not
 credible.  
[6]  Regulation 30-12(A)(1)(e) reads: 
 

 All
 applications for docks and piers should accurately illustrate the alignment of
 property boundaries with adjacent owners and show the distance of the proposed
 dock from such extended property boundaries. For the purpose of this section,
 the extension of these boundaries will be an extension of the high ground
 property line.  The Department may consider an alternative alignment if site
 specific characteristics warrant or in the case of dock master plans, when
 appropriate.