THIS OPINION
 HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN
 ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Burriss
 Electrical, Inc., Appellant,
 
 
 

v.

 
 
 
 Office of
 Occupational Safety and Health, South Carolina Department of Labor, Licensing
 and Regulation, Respondent.
 
 
 

Appeal From Lexington County
 Clyde N. Davis, Jr., Circuit Court Judge
Unpublished Opinion No.  2008-UP-070
Submitted January 2, 2008  Filed January
 23, 2008
AFFIRMED

 
 
 
 Charles F. Thompson, Jr., of Columbia, for Appellant.
 Joseph N. Connell, of Lugoff, for Respondent.
 
 
 

PER CURIAM: Burriss
 Electrical, Inc. (Burriss) appeals from a South Carolina Occupational Safety
 and Health Review Board (the Review Board) decision finding Burriss in willful
 violation of the South Carolina Occupational Safety and Health Regulation 71, 1-1926.651(k)(1)(1991)[1].  After two employees were killed
 when a vertical wall of an earthen trench collapsed, the Office of Occupational
 Safety and Health in the South Carolina Department of Labor, Licensing and
 Regulation (the Department) cited Burriss for four serious violations and one
 willful violation of the South Carolina Occupational Safety and Health
 Regulation (the Act).  Burriss appeals the citation for the willful violation,
 arguing that (1) the Review Board misapplied the legal standard for willful conduct
 in reaching a finding of willfulness; and (2) under an appropriate application
 of the standard there exists no substantial evidence to support a finding
 Burriss committed a willful violation.  We affirm.[2]  
FACTS
Burriss is an electrical systems
 contractor.[3]  During 2002 and 2003, Burriss served as the electrical contractor for the
 building of the Blythewood High School in Blythewood, South Carolina.  At the Blythewood
 site, Burriss dug a trench approximately 121 feet long in order to install
 feeder conduit for power and data communications underneath the building.  Roughly
 eighty feet of the trench measured from six to eight feet deep, making that
 portion of the trench wall essentially vertical.   
On the
 morning of January 28, 2003, a portion of the trench wall collapsed on several Burriss employees working in the trench.  The cave-in partially buried two of
 the employees and caused their deaths.  The Department sent an inspector to
 conduct a fatality inspection of Burriss Blythewood site.  As a result of the
 inspection, Burriss was cited for four serious violations (Citation 3 parts 1,
 2, 3, and 4) and one willful violation (Citation 4).[4]  The violations are as follows: 

 Citation 3 (Serious) 
 1. SCCR 71, 1-1926.21(b)(2) - Failure to instruct each
 employee in the recognition and avoidance of unsafe conditions. . . no trench
 hazard recognition [or] avoidance safety training provided to employees in
 trench in excess of 7 feet deep . . . 
 2. SCCR 71, 1-1926.100(a) - Failure to require employees
 working in areas where there is a possibility of head injury . . . to be protected
 by helmets [in that] . . . no protective helmets [were] worn by 4 employees in [a]
 trench in excess of 7 feet deep . . .
 3. SCCR 71, 1-1926.651(c)(2) - Failed to locate a stairway,
 ladder, ramp or other safe means of egress in trench excavation that are 4 feet
 or more in depth . . . 
 4. SCCR 71, 1-1926.652(a)(1) - Failed to protect each
 employee in an excavation from cave-in by an adequate protection system [and] 
 SCCR
 71, 1-1926.652(b)(1)(i) - Failed to slope excavations at an angle not
 steeper than one and one-half horizontal to one vertical . . .
 Citation 4 (Willful) 
 1. SCCR 71, 1-1926.651(k)(1) - Failure to make daily
 inspections of excavations . . . by a competent person for evidence of a
 situation that could result in possible cave-ins, . . .

          A
 competent person is defined by the Act as: 

 [O]ne who is capable of identifying existing and predictable
 hazards in the surroundings, or working conditions which are unsanitary,
 hazardous, or dangerous to employees, and who has authorization to take prompt
 corrective measures to eliminate them.  In order to be a competent person for
 the purpose of this standard one must have had special training in, and be
 knowledgeable about soils analysis . . . the use of protective systems, and the
 requirements of this standard.  

S.C.
 Code Regs. 71, 1-1926.650(b) (1991). 
Burriss
 filed a notice of protest and a hearing was held before a single Review Board
 member.  At the hearing, Burriss did not contest the four serious violations
 under Citation 3.  The only issue before the Review Board member was the classification
 of a willful violation under Citation 4.  
At the
 hearing, Tommy Burriss testified he had been to the Blythewood site a week
 prior to the excavation of the trench.  He stated it was his understanding the trench
 was to be just over three feet deep.  He further testified when he finally saw
 the trench on the day of the cave-in he was extremely shocked to see that
 ditch that deep.  He said [i]t was horrifying and dangerous.  He stated
 that had he been at the site he would have told people to get out of [the]
 ditch . . . [t]heres just no way [he] would have exposed anybody to that. 
 
When
 asked whether, at the time of the cave-in, he was aware of the Acts trenching
 regulations requiring a competent person to perform daily inspections, Tommy Burriss stated he was not aware of the regulations, nor did he have a copy of
 the OSHA standards, general standards, or construction standards.  Yet, Tommy
 Burriss was questioned about an August 2000 citation issued at a Burriss worksite
 at Stivers Jeep.  Burriss had both erected scaffolding and dug a trench at the
 Stivers Jeep worksite.  With respect to the scaffolding, the Department cited
 Burriss for failure to install a guardrail along the sides and end of the
 scaffolding platforms, classified the violation as serious, and proposed a
 $300 fine.  With respect to the trench, the Department cited Burriss for
 failure to perform daily inspections by a competent person pursuant to Regulation
 71, 1-1926.651(k)(1) of the South Carolina Code.  The Department classified the
 violation as other than serious and did not impose a fine therefor.  Burriss
 protested the citation for the scaffolding violation and eventually entered a
 settlement agreement wherein Burriss agreed to pay a $120 fine and provide
 refresher training for its employees in fall protection.  But, because no
 penalty was proposed for the citation for the trench violation, Burriss did not
 protest the trench violation.  
Tommy Burriss admitted he read the Stivers Jeep citation for lack of a competent
 person.  Yet, at the time of the Blythewood site accident, Tommy Burriss
 testified he maintained the belief his site superintendant, David Marshall was
 a competent person upon my definition.  He admitted at the hearing, in
 hindsight, now I know what a competent person definition is by OSHA and my
 competent person definition are two different things.
The
 Review Board member upheld the willful classification in Citation 4.  Burriss
 filed a petition for review by the entire Review Board.  The petition was denied. 
 Burriss then appealed the matter to the circuit court.  The circuit court
 affirmed the Review Boards denial of discretionary review as well as the Review
 Board members order upholding the citation and corresponding penalty.  This
 appeal follows.  
STANDARD OF REVIEW
This courts review
 of an administrative agencys findings of fact is limited.  The court shall
 not substitute its judgment for that of the agency as to the weight of the
 evidence on questions of fact when those facts are supported by substantial
 evidence.  S.C. Code Ann. §1-23-380(A)(6) (2005)[5]; Dorman v. Dept of Health & Envtl. Control, 350 S.C. 159, 164-65,
 565 S.E.2d 119, 122 (Ct. App. 2002).  In determining whether the agencys
 decision was supported by substantial evidence, this court need only find,
 looking at the entire record on appeal, evidence from which reasonable minds
 could reach the same conclusion that the administrative agency reached.  DuRant
 v. S.C. Dept of Health & Envtl. Control, 361 S.C. 416, 420, 604 S.E.2d
 704, 706-07 (Ct. App. 2004).  The mere possibility of drawing two inconsistent
 conclusions from the evidence does not prevent a finding from being supported
 by substantial evidence.  Id. at 420, 604 S.E.2d at 707.  Further, the
 burden is on the appellant to prove convincingly that the agencys decision is
 unsupported by the evidence.  See Waters v. S.C. Land Res. Conservation Commn, 321 S.C. 219, 226, 467 S.E.2d 913, 917 (1996).
A court can reverse
 an agencys findings, inferences, conclusions, or decisions if they are
 clearly erroneous in view of the reliable, probative and substantial evidence
 on the whole record, or arbitrary or capricious or characterized by abuse of
 discretion or clearly unwarranted exercise of discretion.  S.C. Code Ann.
 §1-23-380(A)(6) (2005).  Further, a court may reverse where an agencys
 decision is affected by an error of law.  Id. 
LAW/ANALYSIS
Burriss
 asserts the circuit court misapplied the legal standard for a willful violation
 and argues, under an appropriate application of the standard, there is no substantial evidence to sustain
 a citation for a willful violation of the Act.  We disagree.
The Act
 itself does not define willful nor has this court had an opportunity to
 interpret its meaning.  In its decision, the Review Board member defined a
 willful violation as committed voluntarily with intentional disregard or demonstrated plain indifference to the Act, citing Occupational Safety
 and Health Law, Mark A. Rothstein, Wests Employment Law Series, St. Paul,
 Minn. 1998, §315.  See also Valdak Corp. v. Occupational Safety and
 Health Review Commn, 73 F.3d 1466, 1468 (8th Cir. 1996) (finding to
 support a classification of willful there must be substantial evidence the
 employer, intentionally disregarded or was plainly indifferent to the
 requirements of the Act); Intercounty Constr. Co. v. Occupational Safety and
 Health Commn, 522 F.2d 777, 780 (4th Cir. 1975), cert. denied, 423
 U.S. 1072 (1976).  When faced with a problem of statutory construction, we
 accord great deference to the interpretation given the statute by the agency
 charged with its administration.  See Dunton v. S.C. Bd. of Examrs
 in Optometry, 291 S.C. 221, 223, 353 S.E.2d 132, 133 (1987) (The
 construction of a statute by the agency charged with its administration will be
 accorded the most respectful consideration and will not be overruled absent
 compelling reasons.).  
In
 the context of occupational safety and health laws, willfulness requires more
 than the constructive knowledge or mere knowledge that would suffice for a
 non-willful violation, but does not require a showing of malicious intent.  Intercounty
 Constr. Co., 522 F.2d at 780, cert. denied, 423 U.S. 1072 (1976).  An act may be willful if the offender shows indifference to the rules; he
 need not be consciously aware that the conduct is forbidden at the time he
 performs it, but his state of mind must be such that, if he were informed of
 the rule, he would not care.  AJP Constr., Inc. v. Sec. of Labor,  357
 F.3d 70, 74 (D.C. Cir. 2004)(citation omitted).  
Employers
 are presumed to be familiar with standards that affect their business;
 therefore, ignorance or even misunderstanding of the standards does not excuse
 noncompliance.  Sec. of Labor v. Hallmark Excavating, Inc., 6 OSHC 1898
 (1978).  Similarly, an omission or failure to act is willful, if it is done
 voluntarily and intentionally.  Havens Steel Co. v. Occupational Safety and
 Health Commn, 738 F.2d 397, 401 (10th Cir. 1984).  Furthermore, a prior
 warning from OSHA may be a factor in determining if willfulness exists.  Valdak,
 73 F.3d at 1469.          
Burriss contends
 the circuit courts decision contains various misapplications of the willful
 standard and a misinterpretation of the evidence and testimony presented to the
 Review Board member.   
The Review
 Board member found sufficient evidence to sustain a willful violation of the
 Act as follows: 

 The
 preponderance of evidence shows that [Burriss] demonstrated plain indifference
 to the Act in many ways . . . If not intentional disregard, [Burriss] clear
 indifference to the Act is very apparent by the uncontested absence of
 knowledge of safety and health standards applicable or potentially applicable
 to a rapidly growing commercial electrical contracting business, lack of
 possession of copies of the OSHA standards for general industry or
 construction, lack of [Burriss]-provided training of employees and supervisors
 for all potential hazards of the job, reliance on general
 contractors to provide adequate safety training for ones employees, lack of
 attention to the warning represented by a previous citation related to a
 specific trenching safety practice that would have helped eliminate other
 violations, and lack of attention to the practices of other nearby contractors
 at the same job site as to trenching safety.  

The
 circuit court likewise relied on similar evidence to uphold the finding of
 willfulness.  The court stated the fact [Burriss] made no effort to acquaint
 anyone, including itself, with the occupational safety and health regulations .
 . . [and] did not even possess a copy of the occupational safety and health
 standards evidenced Burriss plain indifference to general safety
 considerations. 
We
 find there is evidence of a willful violation from the complete absence of
 knowledge by Burriss of the safety and health standards applicable to its
 business at the time of the cave-in.  Burris does not dispute he was previously
 cited for various violations of OSHA standards, one of which was similar to the
 citation at issue herein.  As indicated, the circuit court found Burris made no
 effort whatsoever to acquaint himself or anyone else with the applicable standards.
An
 intentional disregard or plain indifference to the required standards suffices
 to demonstrate a willful act.  One cannot be aware of the existence of
 regulatory standards, have the means to review and learn them, consciously fail
 to do so and then use lack of knowledge as an excuse.  To willfully turn ones
 head to knowledge and to understanding the requirements of the law after being
 exposed to a similar citation in the past is tantamount to a conscious act, a
 conscious disregard, which would meet the definition of a willful act.  Ones
 act of avoiding knowledge or completely disregarding it might also be labeled
 as an intentional and voluntary act. Arguably, some form of indifference, in
 and of itself, without more, may not rise to the level of a willful act.
 However, we need not reach that question since the type of indifference herein
 indeed rises to the level of a willful act or conscious disregard of the existence
 of the standards and is much more than just a misunderstanding or a mere
 negligent or careless act.  The policy of the law does not provide a shield to
 one who is consciously aware of a regulatory scheme but intentionally
 disregards or chooses to disavail himself of, or avoid, such knowledge or
 requirements.  To do otherwise would defeat the intent and goals of the
 regulatory scheme.
Because
 we find this evidence alone sufficient to support a finding of willfulness, we
 need not determine whether the circuit court erred in its application of the
 willful standard or interpretation of the other evidence as suggested by
 Burriss.  Accordingly, the circuit courts order is 
AFFIRMED.
HUFF
 and PIEPER, JJ., and GOOLSBY, A.J., concur.

[1] The text of Section 71, 1-1926.651(k)(1) does not
 appear in the South Carolina Code of Regulations.  Instead, subarticle 7
 indicates South Carolina law incorporates the federal Occupational Safety and Health
 Act (OSHA) Regulation 29 C.F.R. §1926, with a few exceptions.  S.C. Code Regs.
 ch.71, subart. 7 (1991).  This is the case with many other South Carolina
 Occupational Safety and Health Regulations.  See e.g. S.C. Code
 Regs. ch.71, subarts. 6 & 8 (1991).  
[2] We decide this case without oral argument pursuant to
 Rule 215, SCACR.
[3] Burris is a family-owned business with Tommy Burriss
 as project manager and his wife, Christine Burriss, as president.    
[4] In
 addition to citing an employer for a violation, the Department can classify the
 violation as: repeat, serious, or willful.  S.C. Code Ann. §41-15-320 (Supp.
 2006).  Additional penalties are applied
 if any of these heightened classifications are used.  Id.  
[5] This court notes Act 387, effective July 1,
 2006, has since modified S.C. Code Ann.
 §1-23-380 and certain appellate procedures.  However, we review Burriss claim pursuant to S.C. Code Ann. §1-23-380(A)(6) (2005) rather than S.C.
 Code Ann. §1-23-380(A)(5) (Supp. 2007) due to the fact the case arose under the
 prior appellate procedure.  Regardless, as applied to this case, the only
 difference between the two statutes is the numbering of the statutory
 provisions.